IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAV AING | : | CIVIL ACTION |
| | : | |
| v. | : | No. 06-75 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                       **February 23, 2007**

The City of Philadelphia asks this Court to find it did not violate Lav Aing's constitutional rights when it held Aing for four days after his arrest on a mistakenly issued warrant. Because I agree Aing's imprisonment was not caused by any unconstitutional policy, procedure, or custom, I will grant the City's Motion for Summary Judgment in favor of all Defendants.

**FACTS**

Lav Aing was arrested on July 14, 2001, for an alleged act of domestic violence. Four months later, Aing was convicted, and a Judge of the Municipal Court of Philadelphia sentenced him to one year probation. Shortly thereafter, Aing filed a Notice of Appeal. On February 5, 2002, Aing was acquitted by Judge Ida Chen of the Court of Common Pleas for the First Judicial District of Pennsylvania.

On January 25, 2004, during a routine traffic stop, police officers Daniel Adams and David Brzyski checked the National Crime Information Computer (NCIC) and learned Aing had an outstanding detainer for failure to appear for a probation meeting. The Clerk of Quarter Sessions,

an entity of the Commonwealth of Pennsylvania, reported the detainer to the NCIC.[1]  During his arrest, Aing denied knowledge of any warrant or detainer.  Despite these protests, the officers arrested Aing, held him at a nearby police station, and then transported him to a prison facility where he was imprisoned until January 29, 2004.  Although Police Department policy mandates the arresting officer call the clerk of the court reporting the warrant or detainer to ensure its active status, Aing alleges officers Adams and Brzyski did not call to check on the detainer.[2]

After his arrest, Aing says he asked the officers: to double-check the warrant; the nature of the warrant; and to speak with an attorney.  In response, Aing maintains the officers stated he would have to wait to see a Judge or await trial.

**DISCUSSION**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c) (2005); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  When the moving party does not bear the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Evaluating Aing's § 1983 claims, I first address whether a constitutional right was violated.  Finding a constitutional violation occurred, I next consider whether Aing can maintain his claims against the City under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), and whether Aing's

---

[1] In Pennsylvania, the Clerk of Quarter Sessions serves as the court clerk for the Criminal Courts of Common Pleas and Municipal Courts, as well as the Juvenile Division of Family Court.

[2] A call to check on the warrant would have been to the Clerk of Quarter Sessions, which may or may not have revealed the invalidity of the warrant.

claims against Police Commissioner Sylvester Johnson survive. Finally, I evaluate the Clerk of Quarter Sessions' immunity defense.

"To make a prima facie case under § 1983, the plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 1999). It is undisputed the arresting officers were acting under color of law when they executed the warrant for Aing's arrest.

Because § 1983 is not a source of substantive rights, the next step is to identify a violation of a federal right.[3] *Id*. The Fourth Amendment forbids unreasonable searches and seizures and requires warrants be supported by probable cause. U.S. Const. amend. IV. Under the Fourth Amendment, a person is seized "only if he is detained by means intentionally applied to terminate his freedom of movement." *Berg*, 219 F.3d at 269. Aing's arrest and detention for four days constitute a seizure for Fourth Amendment purposes.

To prove false arrest for a § 1983 claim, Aing must demonstrate the arresting officer lacked probable cause to make the arrest.[4] *See Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). The Third Circuit in *Berg*, held the Supreme Court's decision in *Whiteley v. Warden*, 401 U.S. 560 (1971), stands for the proposition an erroneously issued warrant cannot provide probable cause for an arrest.

---

[3] Although Aing claims his constitutional rights were deprived under the Fourteenth Amendment, "[t]he Supreme Court has held that when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." *Berg*, 219 F.3d at 268.

[4] Aing's false imprisonment claim arises from his claim he was falsely arrested. *See Groman v. City of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.").

219 F.3d at 269-70.

In *Berg*, a warrant intended for Paul Banks was accidentally generated for Raymond Berg when an officer transposed two digits in the criminal complaint number when entering the information into the county's computerized Integrated Court Information System. *Id*. at 266. Although the computer screen displayed a different name, date of birth, criminal complaint number, Social Security number, and address from the Arrest Warrant Information Sheet, the officer concluded the computerized information system contained an old address and manually changed the information. *Id*. at 267. The officer then generated a warrant for Berg's arrest and sent it to the Allegheny County Sheriff's Office. *Id*. The Court rejected the proposition an arresting officer's mistaken belief an arrest warrant was issued in the plaintiff's name supplied sufficient probable cause under the Fourth Amendment. *Id*. at 273-74. There, the Court relied on *Rogers v. Powell*, 120 F.3d 446 (3d Cir. 1997), arguing "[t]he legality of a seizure based soley on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to seize the suspect." *Berg*, 219 F.3d at 271 (quoting *Rogers*, 120 F.3d at 453). Where neither officer had knowledge of the requisite facts and circumstances necessary to support a finding of probable cause, the Court found the arrest violated the Fourth Amendment. *Id*.

In Aing's case, the arresting officer relied on an NCIC report erroneously listed by the Clerk of Quarter Sessions. Here, as in *Berg*, the arresting officer's mistaken belief does not supply sufficient probable cause under the Fourth Amendment. Finding a constitutional violation occurred, I must next consider the liability of the individual defendants.

Under *Monell*, a municipality can be liable under § 1983 for acts pursuant to an unconstitutional policy, custom, or practice, if the municipality was the "moving force" behind the

injury alleged. *Berg*, 219 F.3d at 275-76. Aing's claims against the City fail because, under the facts of this case, the City cannot be held liable for the decision of an individual officer on a single occasion, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988), and there is no evidence to show "the need for more or different training was so obvious and so likely to lead to a violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference." *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001).

To make a claim of municipal liability, Aing must point to a specific municipal policy or custom. *Berg*, 219 F.3d at 275. A policy exists when a decision maker with final authority to establish municipal policy with respect to the action in question issues an official proclamation, policy, or edict. *Id.* A custom is a course of conduct which, although not formally authorized by law, reflects practices of state officials that are so permanent and well settled as to virtually constitute law. *Id.* At oral argument, the City conceded Aing was arrested pursuant to the City's policy of relying on the NCIC system as a central database to determine if an outstanding warrant exists. Additionally, Aing alleges the officer's failure to double-check the status of the detainer reported by NCIC is evidence of an unconstitutional policy or custom.

Once a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate the municipality was a moving force behind the alleged injury through its deliberate conduct. *Id.* at 276. If the policy or procedure does not facially violate federal law, causation can be established only by showing the action was taken with "deliberate indifference" to its known or obvious consequences. *Id.* (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)). "A showing of simple or even heightened negligence will not suffice." *Id.* (quoting *Bryan County*).

Because the City's policy is constitutionally valid on its face, Aing must establish causation

by showing the City acted deliberately indifferent toward the constitutional violation. Aing argues the arresting officer's failure to follow Police Department Policy resulted from the City's deliberate indifference.[5] Here, Aing does not allege the City is indifferent toward officers who ignore Police Department policies. Thus, I must consider whether this isolated act establishes a municipal policy or procedure. In *Praprotnik*, the Supreme Court considered when a decision by an official on a single occasion can establish an unconstitutional municipal policy. 485 U.S. at 123. There, the Court held "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *Id*. (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). In the present case, Aing does not allege the arresting officer was a policymaker under *Praprotnik*. Without more, "an official's failure to adhere strictly to municipal policies does not itself support an inference of a policy that can subject the [municipality] to liability." *See Nawrocki v. Township of Collnaugh*, 34 F. App'x 832, 837 (3d Cir. 2002) (applying *Praprotnik* where an officer acted without final policy making authority).

Alternatively, Aing contends the City is liable because it failed to provide sufficient procedural safeguards against errors such as the one resulting in Aing's arrest. The Third Circuit has generally applied the Supreme Court's ruling in failure-to-train cases to claims of liability through inaction. *Id*. "Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *Id*. (citing *Bryan County*, 520 U.S. at 408-09). Although it is possible to prove deliberate indifference without showing a pattern of violations, the burden on the plaintiff is significant. *Id*. In *Bryan*

---

[5] It is instructive to note Aing did not bring a claim against the arresting officer. Although I consider his role to determine whether his omission exposed the City to liability, the issue of the arresting officer's liability is not before the Court.

*County*, the Supreme Court held a plaintiff may prove such a violation in only a narrow range of circumstances where a violation of federal rights is highly predictable based on the municipality's failure to properly train law enforcement officers. *Bryan County*, 520 U.S. at 409. In such cases, the plaintiff "must present evidence that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference." *Muhlenberg Township*, 269 F.3d at 216.

In the present case, there is no evidence of a pattern of constitutional violations resulting from the City's reliance on NCIC. Aing's only evidence is a baseless assertion the City's policies are unconstitutional because they resulted in Aing's arrest. Applying *Bryan County*, I cannot accept this assumption. Here, Aing has failed to present any evidence that more or different training would reduce the likelihood of this kind of constitutional violation. In *Berg*, an officer testified there was no double check to ensure warrants were issued in the correct name. Here, police department policy dictates the arresting officer check the status of the outstanding warrant or detainer. Although the officer in this case disobeyed Department policy and failed to check the status of the detainer, this single incident is not enough to subject the City to Liability.

Sylvester Johnson, Commissioner of the Philadelphia Police Department, argues any suit against him in his official capacity must be treated as a suit against the City of Philadelphia. In *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985), the Supreme Court held a suit brought against a public official in their official capacity is equivalent to a suit brought against the public entity. Such suits, "in all respects other than name, are to be treated as a suit against the entity." *Id*. I therefore treat all claims against Johnson in his official capacity as claims against the City of Philadelphia. As a matter of law, Aing's claims against Johnson must fail.

Aing also brings a claim against Johnson in his individual capacity arguing Johnson failed to properly supervise. There are two theories of supervisory liability that are applicable to this case. First, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989)). Here, Aing presented no evidence Johnson is responsible for setting policies and procedures for the police department. Even assuming Johnson is responsible for the policies in question, Aing cannot sustain a claim against Johnson as a policymaker. Given my conclusion the City could not be held liable for having a policy, practice, or custom which caused the constitutional harm, I cannot find Johnson is liable for establishing an unconstitutional policy, practice, or custom. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) ("[T]he standard of individual liability for supervisory public officials [is] no less stringent than the standard of liability for the public entities that they serve.").

"The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M.*, 372 F.3d at 586. Here, Aing presented no evidence Johnson participated in violating Aing's rights, directed others to violate them, or had knowledge of and acquiesced to the arresting officer's repeated violations of police department policy. Without more, Aing's claims against Johnson in his individual capacity must fail.

Aing's claims against the Clerk of Quarter Sessions fail because the Clerk of Quarter

Sessions has Eleventh Amendment immunity as an entity of the Commonwealth. In Pennsylvania, the Clerk of Quarter Sessions serves the Criminal Courts of Common Pleas and Municipal Courts, as well as the Juvenile Division of Family Court, all of which are state judicial entities. It is well settled the Eleventh Amendment bars civil rights claims against a state judicial district. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233 (3d Cir. 2005) (where the instrumentality is an entity of the Commonwealth, the Commonwealth is the real party in interest and, therefore, the Judicial District is entitled to immunity); *see also Davis v. Quarter Sessions Court*, 361 F.Supp. 728, (E.D. Pa. 1973) (holding a prisoner's civil rights claim against the Clerk of Quarter Sessions is barred by the doctrine of judicial immunity). Therefore, Aing's claims against the Clerk of Quarter Sessions fail as a matter of law.[6]

Aing's claims against the Philadelphia Police Department fail because the police department is not a legal entity for purposes of suit. *Baldi v. City of Philadelphia*, 609 F. Supp. 162, 168 (E.D. Pa. 1985) (holding separate departments of a city are not corporate legal entities and all suits shall be against the City).

An appropriate Order follows.

---

[6] While it is not clear whether the Clerk of Quarter Sessions is properly before the Court, and Aing stated during oral argument he believed the Clerk was protected from suit by the Eleventh Amendment, I address the immunity issue here for the sake of thoroughness.